# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| **MARY ELIZABETH WEBB,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 3:22-cv-00876** |
| | ) | **Judge Aleta A. Trauger** |
| **AUTO-OWNERS INSURANCE** | ) | |
| **COMPANY,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## <u>MEMORANDUM</u>

Before the court is the Motion to Dismiss (Doc. No. 12) filed by defendant Auto-Owners Insurance Company ("Auto-Owners"). The plaintiff, Mary Elizabeth Webb, has filed a Response in opposition to the motion (Doc. No. 16), and the defendant filed a Reply (Doc. No. 17). For the reasons set forth herein, the defendant's motion will be granted, and this case will be dismissed without prejudice to the plaintiff's ability to return to the court when the underlying liability claims have been resolved, if necessary.

## I. FACTUAL AND PROCEDURAL BACKGROUND

According to the allegations in the Complaint, which the court presumes at this juncture to be true, Auto-Owners is an insurance company domiciled in Lansing, Michigan. The plaintiff (who is a resident and citizen of Illinois) claims an amount in controversy in excess of $75,000. The court has diversity jurisdiction over this dispute.

The plaintiff and her husband, George Webb, are the "insureds" under an Automobile Insurance Policy ("Liability Policy") they purchased from Auto-Owners that covered the time period between February 10, 2019 and February 10, 2020. A copy of the Liability Policy is

attached as an exhibit to the Complaint. (Doc. No. 1-1.) The Liability Policy provides up to $500,000 in per-incident coverage for damages related to bodily injury incurred in a motor vehicle accident for which an insured is liable.

The plaintiff and her husband are also the insureds under an Executive Umbrella Policy ("Umbrella Policy") purchased from Auto-Owners that covers the time period from January 22, 2019 through January 22, 2020. A copy of the Umbrella Policy is attached as an exhibit to the Complaint. (Doc. No. 1-2.) The Umbrella Policy provides up to $1,000,000 in coverage related to bodily injury from a motor vehicle accident for which an insured is liable to another person, including another insured.

The plaintiff was seriously injured in a motor vehicle accident ("Accident") that took place on October 13, 2019, when she was a passenger in a vehicle driven by her husband, George Webb. Third party Cathy Hearn was also injured. The police report generated following the Accident allegedly states that George Webb was driving between 85 and 90 miles per hour, traveling west-bound in the right lane on Interstate 24 in Rutherford County, Tennessee, when he collided with the rear end of Cathy Hearn's vehicle. The plaintiff's medical bills arising from the Accident total more than $750,000, and the plaintiff continues to suffer ongoing permanent and life-changing physical, mental, and emotional injuries arising from the Accident. Hearn claims that her medical bills for injuries incurred in the Accident are over $200,000.

Both the Liability Policy and the Umbrella Policy were in effect at the time of the Accident. The plaintiff alleges that she and her husband have at all times performed their obligations and satisfied the conditions for coverage set forth in both Policies, that they have timely paid all premiums due, that the Policies cover the injuries suffered by the plaintiff in the Accident, and that there are no exclusions in either Policy related to an insured's liability to another insured for bodily

injury.

The plaintiff states that she and George Webb notified Auto-Owners about the Accident in a timely manner; that there are eye-witnesses identified in the police report who claim to have seen George Webb strike the Hearn vehicle from the rear, that the police report states that George Webb failed to stop for the Hearn vehicle, and that Auto-Owners has been in possession of the police report since 2019 and in possession of the crash data retrieved from George Webb's vehicle since 2020. Despite having all of this information, including information about the plaintiff's injuries, Auto-Owners has "made no attempt to pay on the plaintiff's claim for bodily injury caused by George Webb," despite the significant passage of time since the Accident.

The plaintiff filed a lawsuit against George Webb in state court on October 8, 2020, seeking damages for bodily injury caused by George Webb's negligence in operating the Webbs' vehicle. (*Id.* ¶ 59.)[1] Cathy Hearn filed suit against George Webb in the Rutherford County Circuit Court, within a year of the Accident, seeking damages caused by George Webb's negligence in the operation of the Webbs' vehicle. (*See id.* ¶ 60; *see also* Doc. No. 13-2.) The plaintiff alleges that George Webb has continuously cooperated, and continues to cooperate, with Auto-Owners in the defense of the lawsuits filed against him by Hearn and the plaintiff. Despite "multiple opportunities to resolve" the plaintiff's and Hearn's claims for the Policies' limits ($1,500,000), "Auto-Owners has never made any offer to pay on the plaintiff's claim and/or Cathy Hearn's claim." (*Id.* ¶¶ 65, 66.)

In addition, the court takes judicial notice of the Complaint, filed as an exhibit to the defendant's Motion to Dismiss, filed by George Webb against Cathy Hearn, also in the Rutherford

---

[1] This lawsuit is referenced in the Complaint, but a copy of the underlying state court complaint was not filed as an exhibit to the plaintiff's Complaint or the defendant's Motion to Dismiss. It is not clear in which court it was filed.

County Circuit Court, alleging that Hearn's negligence caused the Accident. (*See* Doc. No. 13-1.)

On July 12, 2022, George Webb's independently retained attorney demanded that Auto-Owners tender the Policies' limits to settle the claims of both the plaintiff and Cathy Hearn in order to protect George Webb's assets. The same letter stated that George Webb was "willing to admit that he was at least 51% at fault" (Doc. No. 1 ¶ 74) and that Mr. Webb and his attorney were aware of the risk that a jury would find him 100% at fault. As of July 12, 2022, Auto-Owners' attorneys had deposed both the plaintiff and Hearn, and Hearn's attorney was demanding to take George Webb's deposition.

Following receipt of that letter, Auto-Owners made no effort to resolve the claims against George Webb, despite having had thirty-three months to investigate the claims, thus purportedly placing the plaintiff's and her husband's assets at risk. According to the plaintiff, Auto-Owners continues to represent to the plaintiff and George Webb that an "Illinois attorney" is reviewing the terms of the Policies to determine whether they provide coverage for the plaintiff's injuries.

Notably, the plaintiff does not allege that Auto-Owners has failed to provide a defense to George Webb in the underlying lawsuits, nor does she allege that the state lawsuits against George Webb have been finally resolved, either by entry of judgment at trial or through a settlement.

Nonetheless, the plaintiff asserts a claim against Auto-Owners for breach of contract, specifically by "acting in bad faith," thus breaching the covenants of good faith and fair dealing implied in every contract. (Doc. No. 1 ¶¶ 83, 84.) Auto-Owners' alleged acts of bad faith have taken the form of, for example, (1) "making no attempt to resolve the claims against George Webb within his policy limits despite knowing he has liability in excess of the combined policy limits"; (2) knowingly misrepresenting to the plaintiff that it needed an "Illinois attorney" to interpret the coverage of the Policies it sold to the plaintiff and her husband or, alternatively, waiting until

nearly three years after the Accident to engage in any coverage analysis, in violation of 215 Ill. Comp. Stat. Ann. § 5/154.6(a) & (d); (3) not making a good-faith attempt to effectuate a prompt and equitable settlement, when George Webb's liability is, not just "reasonably clear," but "clear and convincing, and he has admitted liability to Auto-Owners," in violation of § 5/154.6(d); (4) failing to take any action to affirm or deny coverage for the plaintiff's claims, in violation of § 154.6(i); (5) making no offer to settle the plaintiff's claims when reasonable minds could only conclude that her claim is in excess of George Webb's liability coverage, in violation of § 154.6(j); and (6) failing to provide a reasonable and accurate explanation of the basis for its refusal to take steps to resolve the plaintiff's and Hearn's claims, in violation of § 154.6(n). (*See* Doc. No. 1 ¶¶ 85–95.) The plaintiff asserts that these actions amount to a "vexatious and unreasonable delay and refusal to resolve the matter," that the defendant has placed the plaintiff's and her husband's marital assets at risk and that, due to its "bad faith and blatant disregard for its insured," Auto-Owners "is liable for the full measure of damages the jury awards to [the plaintiff] and Cathy Hearn in the underlying actions." (*Id.* ¶¶ 97–99.). The Complaint also seeks attorney's fees and other statutory damages from Auto-Owners under 215 Ill. Comp. Stat. Ann. § 5/155, based on the allegations of its vexatious and unreasonable delay in settling the claims against George Webb. The plaintiff asserts that such delay has caused her mental anguish and emotional distress, and she seeks attorney's fees, costs, and statutory damages. The plaintiff seeks to recover $3,000,000 in bodily injury damages, attorney's fees in the amount of $1,000,000, and statutory damages of $60,000, plus costs and interest, for total damages in the amount of $4,060,000. (Doc. No. 1, at 15.)[2]

---

[2] The court observes that the plaintiff is in the curious hybrid position of being both an insured and a third-party claimant against her husband, who is also an insured. As a tort claimant, she has every incentive to maximize her recovery; as an insured, she has an incentive to see that

Auto-Owners seeks dismissal of the Complaint on the grounds that, as discussed in greater detail below, (1) the plaintiff's claims are unripe, and (2) the plaintiff fails to state a colorable bad faith claim under Illinois law.

## II.   LEGAL STANDARD

In resolving a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court must "construe the complaint in the light most favorable to the plaintiff, accept all well-pleaded factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff." *Courtright v. City of Battle Creek*, 839 F.3d 513, 518 (6th Cir. 2016). Federal Rule of Civil Procedure 8(a)(2) requires only that a complaint contain "a short and plain statement of the claim." Fed. R. Civ. P. 8(a)(2). However, "[t]he factual allegations in the complaint need to be sufficient to give notice to the defendant as to what claims are alleged, and the plaintiff must plead 'sufficient factual matter' to render the legal claim plausible, *i.e.*, more than merely possible." *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

"The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). A plaintiff must plead more than "labels and conclusions," "a formulaic recitation of the elements of a cause," or "'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (alteration in original) (quoting *Twombly*, 550 U.S. at 555, 557). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

---

Cathy Hearn's claims are also covered within policy limits and that she and her husband are not saddled with a judgment in excess of the Liability and Umbrella Policy. These are somewhat conflicting positions, the tension between which the plaintiff's Complaint does not acknowledge.

When presented with a Rule 12(b)(6) motion, the court may consider the complaint and any exhibits attached thereto, as well as public records, items appearing in the record of the case, and exhibits attached to defendant's motion to dismiss—"so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (citing *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001)). If the materials are *not* "referred to in the complaint" and "central to the claims contained therein," *Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 681 (6th Cir. 2011) (quoting *Bassett*, 528 F.3d at 430), consideration of extrinsic materials will require the court to convert a motion to dismiss into a motion for summary judgment, Fed. R. Civ. P. 12(d).

## III.     ANALYSIS

### A.       Ripeness

The "basic rationale" of the ripeness doctrine "is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements . . . and also to protect . . . from judicial interference until a[] . . . decision has been formalized and its effects felt in a concrete way by the challenging parties." *Kiser v. Reitz*, 765 F.3d 601, 606 (6th Cir. 2014) (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 148–49 (1967)) (alterations added by the Sixth Circuit). Generally, "[a] claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Id.* (quoting *Texas v. United States*, 523 U.S. 296, 300 (1998)). The Supreme Court has suggested that the analysis of whether a case is ripe for review requires the court "to evaluate both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Abbott Labs.*, 387 U.S. at 149.

As traditionally understood, the ripeness doctrine draws "both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction." *Beech v. City*

*of Franklin*, 687 F. App'x 454, 457 (6th Cir. 2017) (quoting *Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803, 808 (2003)). Recent cases have raised some doubt as to whether the purely prudential aspects of ripeness continue to provide an independent basis for dismissing a case. *See Miller v. City of Wickliffe*, 852 F.3d 497, 503 n.2 (6th Cir. 2017) (discussing questionable vitality of prudential ripeness in the wake of *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 125–28 (2014)); *see also Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 167 (2014) (same); *Clark v. City of Seattle*, 899 F.3d 802, 809 n.4 (9th Cir. 2018) (same); *but see Wyoming v. Zinke*, 871 F.3d 1133, 1141 (10th Cir. 2017) (treating prudential ripeness as an exception to *Lexmark*). As this court has previously observed, however, to date "prudential ripeness has never been wholly repudiated by either the Supreme Court or the Sixth Circuit," so the court continues to consider the traditional contours of the doctrine. *Tenn. State Conf. of the N.A.A.C.P. v. Hargett*, 441 F. Supp. 3d 609, 627 (M.D. Tenn. 2019).

Under this approach, "[t]hree factors guide the ripeness inquiry: '(1) the likelihood that the harm alleged by the plaintiffs will ever come to pass; (2) whether the factual record is sufficiently developed to produce a fair adjudication of the merits of the parties' respective claims; and (3) the hardship to the parties if judicial relief is denied at this stage in the proceedings.'" *Berry v. Schmitt*, 688 F.3d 290, 298 (6th Cir. 2012) (quoting *Grace Cmty. Church v. Lenox Twp.*, 544 F.3d 609, 615 (6th Cir. 2008)).

### B. Breach of Contract Claim

#### 1. The Defendant's Arguments

Auto-Owners contends that both the Liability Policy and the Umbrella Policy contain provisions barring an insured from bringing a legal action prior to an adjudication of liability. Specifically, the Liability Policy states that "[n]o legal action may be brought against" Auto-Owners until Auto-Owners agree[s] [that] a person entitled to coverage has an obligation to pay

or until the amount of that obligation has been determined by judgment after trial." (Liability Policy, Doc. No. 1-1, at 26.) Likewise, the Umbrella Policy states:

> We [Auto-Owners] may not be sued under the Personal Liability Coverage until the obligation of an insured to pay is finally determined either by judgement against the person after actual trial or by written agreement of the person, the claimant and us.

(Umbrella Policy, Doc. No. 1-2, at 16.) Based on this provision, Auto-Owners contends that George Webb's liability remains undetermined and, therefore, that the plaintiff's claim under either Policy is unripe.

Second, Auto-Owners contends that the plaintiff's claims are unripe under Illinois law related to the "stacking" of policies, suggesting, as best the court can understand, that the plaintiff would not be entitled to recover both under her own (and George Webb's) policy and under Hearn's, if Hearn is ultimately determined to be at fault. The defendant appears to be arguing that, because liability has not been determined, it is unclear whether the plaintiff may obtain coverage under the Liability Policy's uninsured/underinsured motorist policy limit, which would only apply if Cathy Hearn is deemed to be at fault for an amount greater than her own insurance policy limits. Alternatively, Auto-Owners asserts that, if George Webb is 100% at fault, as the plaintiff surmises, then plaintiff will not have a claim under the uninsured/underinsured motorist provisions of the Liability Policy.[3]

Third, Auto-Owners argues that payment of the plaintiff's claims under the Liability Policy before satisfying Cathy Hearn's claim—assuming, as the plaintiff does, that Hearn holds a "minority or no fault" for the Accident—could open the insureds, both the plaintiff and George Webb, to personal liability for Hearn's claims. Additionally, the defendant asserts that, by its own

---

[3] The plaintiff does not appear to be claiming coverage under the uninsured/underinsured motorist provision of the Liability Policy.

terms, the Umbrella Policy is an excess policy that provides coverage only if the Liability Policy limits are exhausted, which has not yet occurred. (*See* Doc. No. 1-2, at 15.)

2.    *The Plaintiff's Response*

The plaintiff responds that the allegations in the Complaint plead all of the essential elements of a breach of contract claim based on a breach that, she contends, has already taken place and damages that have already occurred. More specifically, she contends that she has pleaded the existence of an enforceable contract, her compliance with all material terms of the contract, Auto-Owner's breach of contract by breach of its implied duty of good faith, and resulting damages. She points to her allegations that George Webb's liability is basically uncontroverted, that Auto-Owners knows or should have known that George Webb's liability for the plaintiff's and Hearn's injuries exceeds the applicable policy limits, that the plaintiff and Hearn have provided Auto-Owners multiple opportunities to settle within policy limits, but Auto-Owners has "never made any offer to pay on the plaintiff's claim and/or Cathy Hearn's claim." (Doc. No. 1 ¶ 66.) The plaintiff contends that, under Illinois law, an insurer has a "duty to act in good faith in responding to settlement offers" (Doc. No. 16, at 7 (quoting *SwedishAm. Hosp. Ass'n v. Ill. State Med. Inter-Ins. Exch.*, 916 N.E.2d 80, 99 (Ill. Ct. App. 2009))) and that this duty arises "when there is a reasonable probability that a recovery in excess of policy limits will expose the insured" (*see id.* at 8 (quoting *Cent. Ill. Pub. Serv. Co. v. Agric. Ins. Co.*, 880 N.E.2d 1172, 1180 (Ill. Ct. App. 2008))).

Regarding the language of the Policies barring suit until judgment has been rendered or, at a minimum, until Auto-Owners "agree[s] a person entitled to coverage has an obligation to pay," the plaintiff maintains that Auto-Owners *should* have agreed that a person entitled to coverage has an obligation to pay and that it must act in good faith in making this determination. (Doc. No. 16, at 9.)

3.        *Analysis*

Illinois courts recognize that an "insurer's conduct may give rise to both a breach of contract action and a separate and independent tort action." *Cook ex rel. Cook. v. AAA Life Ins. Co.*, 13 N.E.3d 20, 33 (Ill. App. Ct. 2014) (quoting *Cramer v. Ins. Exch. Agency*, 675 N.E.2d 897 (Ill. 1996)). The plaintiff here does not purport to state an independent tort action, and she expressly characterizes her substantive claim as one for breach of contract. (*See* Doc. No. 1, at 11.)

Under Illinois law, as elsewhere, the elements of a breach of contract claim are "(i) the existence of a valid and enforceable contract, (ii) performance by the plaintiff, (iii) breach of the contract by the defendant, and (iv) [a] resultant injury to the plaintiff." *Babbitt Municipalities, Inc. v. Health Care Serv. Corp.*, 64 N.E.3d 1178, 1186 (Ill. App. Ct. 2016) (quotation marks and citation omitted). Illinois law also recognizes that "[e]very contract implies good faith and fair dealing between the parties to it." *Cramer*, 675 N.E.2d at 903. At the same time, however, "Illinois does not recognize an action for violation of the implied covenant of good faith and fair dealing independent of a breach of contract claim."[4] *Savis, Inc. v. Cardenas*, 528 F. Supp. 3d 868, 878–79 (N.D. Ill. 2021) (quoting *LaSalle Nat'l Bank v. Metro. Life Ins. Co.*, 18 F.3d 1371, 1376 (7th Cir. 1994)); *see also McArdle v. Peoria Sch. Dist. No. 150*, 705 F.3d 751, 755 (7th Cir. 2013) ("The

---

[4] Illinois recognizes an exception to this rule. In *Cramer*, the Illinois Supreme Court stated that a separate action in tort would remain available when an insurer breaches its duty to settle an action brought against the insured by a third party. The court reasoned that, in that setting, the insured relies on the insurer for defense of the action, but the insurer's interest in defending against the claim may conflict with the insured's interest in avoiding a judgment that exceeds the amount of the policy limits. An insurance policy does not spell out the insurer's duty to settle, so tort law remains an appropriate ground on which to evaluate the insurer's conduct. *See Cramer*, 675 N.E.2d at 903–04. *Cramer* expressly rejected the existence of an independent tort of breach of a general duty of good faith and fair dealing, and it distinguished between duty-to-settle cases and actions on breach of contract by an insured against its insurer. In the latter context, the court noted, "[t]he policyholder does not need a new cause of action to protect him from insurer misconduct where an insurer refuses to pay. The policyholder has an explicit contractual remedy." *Id.* at 904.

obligation of good faith and fair dealing is used as an aid in construing a contract under Illinois law, but does not create an independent cause of action. Nor does it permit a party to enforce an obligation not present in the contract." (internal citation omitted)).

In this case, the plaintiff's allegations regarding Auto-Owners' breach of its obligations under the contract involve a failure to settle, and her damages allegations likewise rest on the failure to settle. However, the plaintiff does not characterize her claim as based on the independent tort of the insurance company's breach of a duty to settle, nor has she alleged facts that would support such a claim. The elements of this claim include a refusal to settle within policy limits, a judgment or independent settlement outside policy limits, and damages in the amount of the excess judgment or settlement, resulting from the insurance company's repudiation of the opportunity to settle within policy limits. *See, e.g.*, *Haddick ex rel. Griffith v. Valor Ins.*, 763 N.E.2d 299, 303 (Ill. 2001) ("If the insurer breaches this duty, it may be liable for the entire judgment against its insured, including any amount in excess of policy limits."); *see also Cramer*, 675 N.E.2d at 903 (same); *Nat'l Union Fire Ins. Co. of Pittsburgh v. Cont'l Ill. Corp.*, 673 F. Supp. 267, 273 (N.D. Ill. 1987) ("If the insurer's settlement refusal decision is made negligently or in bad faith, Illinois courts properly impose liability on the insurer for any harm caused the insured (the amount by which the judgment [or ultimate settlement made without the insurer's participation] exceeds the policy). In that way the insurer may still gamble, but the adverse consequences of every careless or bad faith gamble are thrust on the insurer and not the insured.").

Here, because no judgment or independent settlement of either of the underlying liability claims has been effected—much less a judgment or settlement outside policy limits—it has not yet been established whether Auto-Owners' "gamble" in refusing to settle will pay off. That is, while the plaintiff is correct that the defendant has "a duty to participate in settlement negotiations in

good faith" and that its duty to settle "*arises* when there is a reasonable probability that a recovery in excess of policy limits will expose the insured," *Cent. Ill. Pub. Serv. Co. v. Agric. Ins. Co.*, 880 N.E.2d 1172, 1180 (Ill. App. Ct. 2008) (citations omitted) (emphasis added), that does not mean that a cause of action *matures* at that point.

Insofar as the plaintiff asserts a breach of contract claim based on a failure to settle, the plaintiff has not pointed to any actual contractual provision that the defendant has breached. Rather, she alleges only that the defendant has breached the implied covenant of good faith and fair dealing, in support of which she alleges myriad ways in which the defendant's conduct constitutes "improper claims practice" under the Illinois statute, 215 Ill. Comp. Stat. Ann. § 5/154.6. As set forth above, however, Illinois does not recognize a stand-alone claim for breach of the implied covenant of good faith and fair dealing; a breach of contract must accompany such a claim.[5]

The defendant's ripeness arguments largely rely on the fact that, because no settlement or judgment has been achieved, George Webb's liability and the amount of any such liability both remain in dispute, and the plaintiff's damages are purely speculative. In response to the defendant's motion, the plaintiff argues only that she has "pled [that] the defendant breached its duty of good faith implied in the contract and specifically alleged facts in support of this allegation." (Doc. No. 16, at 7.) As set forth above, those facts involve the defendant's alleged engagement in "improper claims practices," not actual breach of the insurance policy. The plaintiff also insists that she has

---

[5] Illinois law also does not create an independent civil cause of action by consumers against insurance companies for engaging in "improper claims practices," though engaging in such practices arguably could inform a determination of whether the company has "vexatious[ly] and unreasonabl[y]" delayed payment or settlement of a claim, for purposes of 215 Ill. Comp. Stat. Ann. § 5/155, discussed below. Instead, if the Director of Insurance finds that an insurance company has knowingly engaged in "improper claims practices," the company may be subject to a civil penalty, suspension of the company's certificate or authority, or both. *Id.* § 5/154.8(1).

alleged damages based on the defendant's failure to settle her claim and Hearn's claim within policy limits. (*Id.* at 7.) However, as also set forth above, the tort of failure to settle within policy limits is distinct from a breach of contract claim, and the plaintiff does not allege facts supporting such a claim anyway.[6]

The Complaint demands damages for breach of contract in the form of "the full measure of damages the jury awards to [the plaintiff] and Cathy Hearn in the underlying actions." (Doc. No. 1 ¶ 99.) The fact that there has been no jury award, no finding of liability on the part of George Webb—and no refusal on the part of the defendant to pay any such jury award—substantiates the defendant's argument that the plaintiff's claims are unripe. Her damages are entirely speculative, at best. There has been no suggestion that the defendant actually breached the Liability Policy by denying coverage or refusing to provide a defense for George Webb in the underlying state-court actions, nor does the plaintiff claim that Auto-Owners has failed to participate or engage in the underlying state-court litigation, has delayed the progression of the state-court litigation, or has otherwise affirmatively repudiated any of its contractual obligations under the Liability Policy. The Complaint fails to state a claim for breach of the Liability Policy, because it fails to allege facts showing an actual breach of contract or resulting damages. For the same reasons, the breach of contract claim is unripe in the sense that it "rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Kiser*, 765 F.3d at 606. That is, the case may settle within the limits of the Liability Policy or it may go to trial and yield a judgment within those

---

[6] Notably, Illinois law recognizes that an insured has the right to settle a claim, even without the insurance company's participation, if the insurance company has unreasonably refused to settle. *See SwedishAm. Hosp. Ass'n of Rockford v. Ill. State Med. Inter-Ins. Exch.*, 916 N.E.2d 80, 100 (Ill. App. Ct. 2009) ("When the insurer arbitrarily refuses to settle within policy limits, the insured may effect a reasonable settlement himself without breaching any conditions of the policy."). But the plaintiff does not allege that this type of settlement has occurred either.

limits; the defendant may pay all amounts due, or it might refuse to pay. Which way these chips fall will govern whether the plaintiff's inchoate claim ripens into a claim for breach of contract that has resulted in contract-based damages.

The court finds, in short, that there is a relatively strong likelihood that the harm the plaintiff alleges will never come to pass, and the factual record is not sufficiently developed to produce a fair adjudication of the merits of the her claims. *Accord Berry*, 688 F.3d at 298. Even if the defendant's failure to resolve her claims more quickly has caused the plaintiff some hardship, it does not appear to the court that the underlying litigation has been pending for an inordinate amount of time. Regardless, because of the irresolute status of the underlying lawsuits, the issue presented here is not fit for judicial decision. *Abbott Labs.*, 387 U.S. at 149. The claim is subject to dismissal, either as unripe or simply for failure to state a breach of contract claim for which relief may be granted.[7]

Likewise, because there has been no finding of liability that would exhaust the terms of the Liability Policy, there has been no breach of the Umbrella Policy, the coverage provisions of which, on the face of the Policy, do not go into effect until the limits of the Liability Policy's coverage have been exhausted. (*See* Doc. No. 1-2, at 13 ("We will pay on behalf of the insured the ultimate net loss in excess of the retained limit which the insured becomes legally obligated to pay

---

[7] This holding should not be construed to imply that a plaintiff will *never* be able to state a viable breach of contract claim in this context unless the underlying liability issues have been resolved. The plaintiff here, however, has not alleged facts suggesting that the defendant has entirely abandoned the plaintiff and her husband with respect to the underlying litigation, denied coverage altogether, or engaged in dilatory practices designed to draw out the underlying litigation indefinitely in order to avoid its payment obligations. Again, the underlying liability litigation has not been pending for a terribly long time (particularly given that it was filed in the middle of the COVID-19 pandemic), and the allegations in the Complaint indicate that, at least as of a few months before the date the plaintiff filed this lawsuit, discovery and settlement negotiations were ongoing in the underlying lawsuits. (*See* Doc. No. 1 ¶¶ 61, 69–70.)

as damages because of personal injury . . . .").) Any claim for breach of the Umbrella Policy is also subject to dismissal.

### C.    Section 5/155

215 Ill. Comp. Stat. Ann. § 5/155 provides that,

[i]n any action by or against a company wherein there is in issue the liability of a company on a policy or policies of insurance or the amount of the loss payable thereunder, or for an unreasonable delay in settling a claim, and it appears to the court that such action or delay is vexatious and unreasonable, the court may allow as part of the taxable costs in the action reasonable attorney fees, other costs, plus an amount not to exceed any one of the following amounts:

(a) 60% of the amount which the court or jury finds such party is entitled to recover against the company, exclusive of all costs;

(b) $60,000;

(c) the excess of the amount which the court or jury finds such party is entitled to recover, exclusive of costs, over the amount, if any, which the company offered to pay in settlement of the claim prior to the action.

215 Ill. Comp. Stat. Ann. 5/155(1).

Section 5/155 does not create an independent cause of action. Rather, "[t]he statute provides an extracontractual remedy to policyholders whose insurer's refusal to recognize liability and pay a claim under a policy is vexatious and unreasonable." *Cramer*, 675 N.E.2d at 900. That is, the statute "presupposes an action on the policy," *id.* at 902, whether for breach of contract, breach of the duty to settle, or some other recognized tort claim. Thus, "for a plaintiff to recover under section 155, the plaintiff must also succeed in the action on the policy." *Kroutil v. State Farm Mut. Auto. Ins. Co.*, 195 N.E.3d 376 (Ill. App. Ct. 2021), *app. denied*, 187 N.E.3d 727 (Ill. 2022).

Because the plaintiff's breach of contract claim will be dismissed as unripe, her § 5/155 claim cannot stand alone and must also be dismissed without prejudice.

**IV. CONCLUSION**

For the reasons set forth herein, the defendant's Motion to Dismiss will be granted, and the plaintiff's Complaint will be dismissed in its entirety, without precluding her ability to return to the court following resolution of the underlying liability claims.

An appropriate Order is filed herewith.

ALETA A. TRAUGER
United States District Judge